1   STEVEN G. KALAR
    Federal Public Defender
2   Northern District of California
    HANNI M. FAKHOURY
3   Assistant Federal Public Defender
    13th Floor Federal Building - Suite 1350N
4   1301 Clay Street
    Oakland, CA 94612
5   Telephone:   (510) 637-3500
    Facsimile:   (510) 637-3507
6   Email:       Hanni_Fakhoury@fd.org

7

8   Attorneys for DELMAR ROSALES-AVILA

9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,          | **Case No.:** CR 19–00536 VC

15          Plaintiff,                 | **DEFENDANT'S SENTENCING
                                        | MEMORANDUM AND MOTION FOR
16      v.                             | DOWNWARD VARIANCE**

17  DELMAR ROSALES-AVILA,              | **Court:**        Courtroom 4, 17th Floor

18          Defendant.                 | **Hearing Date:**  April 29, 2020
                                       | **Hearing Time:**  1:00 p.m.
19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

In October 2019, Mr. Rosales-Avila was arrested by San Francisco Police Department ("SFPD") and found in possession of small, hand to hand sale quantities of fentanyl.  He was 21 years old at the time of his arrest.  He currently sits in the Santa Rita jail during a global pandemic, hoping he will not get sick, although the odds are stacked against him.  He will be automatically deported to Honduras after he serves his sentence.

Mr. Rosales-Avila asks this Court to exercise its authority to vary from the Guideline range and impose a time served sentence of approximately 193 days.  Such a sentence is consistent with other sentences handed down in recent hand to hand, Tenderloin drug sale cases in the District, and mitigates the health risks caused by COVID-19 by removing Mr. Rosales-Avila from what is likely the most dangerous place to be during a pandemic—a jail—and reducing the jail population to ensure others in the jail and the community outside do not get sick.

## STATEMENT OF FACTS

**A.    Mr. Rosales-Avila's History and Characteristics.**

Mr. Rosales-Avila was born in Francisco Morazan, Honduras, in 1997.  Presentence Investigation Report ("PSR") ¶ 35.  His family was poor and lived in various farms where his father worked.  PSR ¶ 36.  His father struggled to put food on the table, and was physically abusive to Mr. Rosales-Avila, his siblings, and their mother.  PSR ¶ 37.  Gang violence was a constant threat.  *Id*. He only made it to the 6th grade before dropping out of school.  PSR ¶ 46.

He came to the United States when he was 16 years old and has been on his own since.  PSR ¶ 38.  He bounced around from Texas, to Florida, then Washington, before settling in the Bay Area. PSR ¶ 38.  With little education and no work skills, Mr. Rosales-Avila turned to selling drugs to make ends meet.  In 2018, he was convicted of misdemeanor accessory and sentenced to probation and 4 days of jail.  PSR ¶ 25.  The next year, he received his first and only felony conviction before this case for again being an accessory, and received a 90 day jail sentence, serving only half of that time in jail.  PSR ¶ 26.

**B.    The Nature and Circumstances of the Offense and Court Proceedings.**

Mr. Rosales-Avila's case is one of many cases brought as part of the federal government's "Federal Initiative for the Tenderloin," which has resulted in a surge of street level drug dealing prosecutions in federal court.  On September 11, 2019, SFPD officers recognized Mr. Rosales-Avila from prior contacts and arrested him.  PSR ¶¶ 6-7.  A bag he threw while trying to run away was searched, and small amounts of fentanyl seized.  PSR ¶ 8.  The federal indictment was filed on October 17, 2019.  PSR ¶ 1.  Mr. Rosales-Avila was initially charged in state court; he made his initial federal appearance on November 1, 2019. He has been detained since his arrest by SFPD.  PSR ¶ 4.  He pleaded guilty with a plea agreement on January 7, 2020.  PSR ¶¶ 2, 3.

**C.    Mr. Rosales-Avila's Future Rehabilitation Goals and Plans.**

Today, Mr. Rosales-Avila is 22 years old and sitting in jail during a global pandemic. He will be deported to Honduras once he is released.  He will receive no services or rehabilitation while at Santa Rita jail and his primary focus is on staying healthy and not contacting COVID-19 behind bars until he returns to Honduras.  Once he gets there, he hopes to stay healthy, find work, and avoid gang violence.

## SENTENCING ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949).  That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (quotations omitted).  The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).  The sentence recommended in the Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also Carty*, 520 F.3d at 991.

Here, Mr. Rosales-Avila asks this Court to impose a time served sentence of approximately 193 days.

A.   <u>**Seriousness of the Offense, Respect for the Law and Just Punishment.**</u>

There is no question that selling drugs is a serious crime that harms society and must be punished.  At the same time, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

A time served sentence of approximately 193 days is a harsh punishment that takes "into account the real conduct and circumstances" here.  It is more than twice as long as all of Mr. Rosales-Avila's prior jail sentences combined.  *See* PSR ¶ 25 (4 day jail sentence in 2018); ¶ 26 (90 day jail sentence in 2019).  It accounts for the fact that Mr. Rosales-Avila is a street level dealer and ensures he is not punished for possessing a firearm or using or threatening violence, which are factors not present in his case.

Moreover, there is a serious risk that due to the COVID-19 pandemic, Mr. Rosales-Avila could face an effective death sentence.  Even in the best of times, prisons and jails have "long been known to be associated with high transmission probabilities of infectious diseases."[1]  Incarcerated individuals "are at special risk of infection" and "infection control is challenging."[2]  Prisons and jails "contain high concentrations of people in close proximity and are breeding grounds for uncontrolled transmission [of infection]."[3]  Incarcerated individuals share bathrooms, sinks, and showers. They eat

---

[1] Letter from Patricia Davidson, Dean, Johns Hopkins School of Nursing, *et al.,* to Hon. Larry Hogan, Governor of Maryland, Mar. 25, 2020, *available at* https://bioethics.jhu.edu/wp-content/uploads/2019/10/Johns-Hopkins-faculty-letter-on-COVID-19-jails-and-prisons.pdf (co-signed by over 200 faculty members of Johns Hopkins Bloomberg School of Public Heath, School of Nursing, and School of Medicine).

[2] Open Letter from Gregg S. Gonsalves, Assistant Professor, Department of Epidemiology of Microbial Diseases, Yale School of Public Health, *et al.* to Vice President Mike Pence and Other Federal, State and Local Leaders, Mar. 2, 2020, *available at* https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf (co-signed by 814 experts in public health, law and human rights).

[3] Letter from Dr. Sandro Galea, Dean, Boston University School of Public Health, *et al.*, to President Trump, Mar. 27, 2020, *available at* https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf (co-signed by numerous public health officials from leading medical and public health institutions).

together, and sleep in close proximity to each other. They often lack access to basic hygiene items, much less the ability to regularly disinfect their living quarters. "The conditions and reality of incarceration makes prisons and jails tinderboxes for the spread of disease."[4] In short, "our jails are petri dishes."[5]

But this is not the best of times.  COVID-19 has already made it into the Santa Rita jail, where Mr. Rosales-Avila is currently housed. The Alameda County Sheriff reports that 33 inmates and two staff have tested positive in the jail.[6]  The BOP has reported that 566 inmates and 342 staff at 47 prisons and 16 residential reentry centers have tested positive, and 24 inmates have died.[7]  While Mr. Rosales-Avila knows he must be punished for his mistake, that punishment should not include the heightened possibility of catching a life threatening illness.

**B.**    **Deterring Criminal Conduct and Protecting the Public.**

Mr. Rosales-Avila acknowledges the Court may be concerned that prior arrests, convictions and stay away orders have not stopped him from returning to the Tenderloin to sell drugs.

But this time is different.  Presumably the entire point of prosecuting Mr. Rosales-Avila in federal court instead of state court is to extract a longer custodial sentence and ensure he is deported after completing that sentence.  The former has been accomplished; the latter is a foregone conclusion.[8]  Thus, when Mr. Rosales-Avila is released, he will not be released onto the street and

---

[4] Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples Federal Prison in Louisiana," *Washington Post*, Mar. 29, 2020, *available at* https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html.

[5] Timothy Williams *et al.*, "'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars," *New York Times*, Mar. 30, 2020, *available at* https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

[6] *See* https://www.alamedacountysheriff.org/admin_covid19.php.

[7] *See* https://www.bop.gov/coronavirus/.

[8] Mr. Rosales-Avila's conviction under § 841 is a categorical "aggravated felony" under immigration law and he will be ineligible for any relief from deportation.  *See* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" in part as "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802]), including a drug trafficking crime (as defined in [18 U.S.C. § 924(c)])"); *see also United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014) ("noncitizens convicted of aggravated felonies are removable on that basis…and are ineligible for almost all forms of discretionary relief.") (citations omitted).  If he decides to illegally return to the United States, he can be prosecuted for illegal reentry after removal under 8 U.S.C. § 1326, and subject to a harsher statutory penalty.  *See* 8 U.S.C. § 1326(b)(2) (statutory maximum of 20 years for illegal reentry

1    potentially the Tenderloin.  Instead, he will be sent to Honduras.

2         Given the worldwide travel restrictions imposed as a result of COVID-19, the safest and

3    healthiest course for Mr. Rosales-Avila is to remain in Honduras—which as of this filing has 510

4    confirmed coronavirus cases[9]—rather than risk returning to the United States which has the most

5    coronavirus cases and deaths of any country in the world.  His ability to travel will be severely

6    restricted as countries impose strict lockdowns to prevent the virus from spreading.

7         As for protecting the public, the current COVID-19 pandemic supports the immediate release

8    of Mr. Rosales-Avila.  Reducing the prison population not only serves to protect inmates by reducing

9    the number of people potentially exposed, but it also serves to protect to other individuals who come

10   into contact with inmates such as jail staff.

11   **C.    Providing Training, Medical Care or Other Treatment.**

12        "The underlying purposes of sentencing include not only punishment and deterrence, but also

13   the provision of treatment to a defendant in need of it."  *United States v. Bad Marriage*, 392 F.3d

14   1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)).  As explained above, the best way to

15   provide treatment for Mr. Rosales-Avila is to release him from Santa Rita jail as soon as possible so

16   he can avoid exposure to COVID-19 himself, and not spread the disease to others.

17        Moreover, the unfortunate reality is that with jails on lockdown to prevent the spread of

18   COVID-19, Mr. Rosales-Avila is not receiving any treatment services at all while in Santa Rita. In

19   any event, Congress has cautioned courts to recognize that "imprisonment is not an appropriate

20   means of promoting correction and rehabilitation."  18 U.S.C. § 3582(a).  Indeed, the Supreme Court

21   has explained a district court cannot increase the length of a sentence in order to provide a defendant

22   with rehabilitative services, and a court determining the length of a prison sentence "should consider

23   the specified rationales of punishment *except* for rehabilitation, which it should acknowledge as an

24   unsuitable justification for a prison term."  *Tapia v. United States*, 564 U.S. 319, 327 (2011)

25   (emphasis in original).  Thus, a time served sentence is the appropriate sentence to promote treatment

27   defendant with a prior "aggravated felony").

28   [9] *See* Johns Hopkins Coronavirus COVID-19 Global Cases, *available at* https://coronavirus.jhu.edu/map.html.

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*ROSALES-AVILA*, CR 19–00536 VC
5

1  and medical care.

2  **D.    The Guidelines Sentencing Range and Commission Policy Statements.**

3  Mr. Rosales-Avila agrees with the advisory Guideline range calculated in the PSR and plea

4  agreement.  Mr. Rosales-Avila is accountable for between 1 and 2 grams of fentanyl analogue, which

5  generates a base offense level of 14 under U.S.S.G. § 2D1.1(c)(13).  PSR ¶ 14.  He receives a two

6  level reduction for accepting responsibility under U.S.S.G. § 3E1.1(a).  PSR ¶ 21.  Thus, the adjusted

7  offense level is 12.  At a criminal history category of III, the resulting Guideline range is between 15

8  and 21 months in custody.  PSR ¶ 53.

9  **E.    Avoiding Unwarranted Sentencing Disparities.**

10  While the Court must avoid unwarranted sentencing disparities among defendants with similar

11  records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also

12  "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'"  *United*

13  *States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall*, 552 U.S. at 55

14  (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

15  A time served sentence of approximately 193 days avoids unwarranted similarities with

16  defendants who are higher up the drug distribution chain, are armed or use threats of violence while

17  selling drugs.  A time served sentence would avoid unwarranted disparity with other defendants

18  sentenced for hand to hand drug dealing in the Tenderloin.  Numerous defendants have received

19  significant sentencing variances, including time served sentences, even before the COVID-19

20  pandemic.  The current public health crisis only heightens the urgency and propriety of releasing Mr.

21  Rosales-Avila from prison immediately.

22

| Name | Case No. | Drug | Sale Amt. | CHC | USSG Range | Sentence | Priors |
|------|----------|------|-----------|-----|------------|----------|--------|
| Wilson Acosta-Valle | 19-560-VC | Crack, heroin |  | II | 8-14 | 111 days | Federal drug case |
| Santos Aguilar | 19-454-VC | Heroin, meth | $20 | II | 15-21 | 152 days | Illegal reentry |
| Brayan Arteaga | 19-426-WHO | Crack | $16 | II | 8-14 | 37 days |  |
| Wilfredo Cabrera | 19-452-WHO | Heroin | $17 | II | 8-14 | 132 days | 4 year drug sentence; 6 deports |
| Welbur Cardona-Navarro | 19-541-WHO | Heroin, crack | $20 | III | 24-30 | 12 months + | 2 illegal entries |

| | | | | | | 1 day | |
|---|---|---|---|---|---|---|---|
| Yerlyn Cruz-Ortiz | 19-453-SI | Crack | $16 | V | 21-27 | 15 mo | On supervised release for illegal reentry |
| Ronny Dixson | 19-527-WHO | Heroin | | III | 18-24 | 12 months + 1 day | 8 drug felonies, including sales |
| Jesus Flores | 19-429-SI | Cocaine, heroin, meth | $15 | I | 10-16 | 118 days | 2 deports |
| Ismael Martinez | 19-650-RS | Crack, meth | | I | 0-6 | 48 days | |
| David Medina-Guerrero | 20-26-RS | Crack | $20 | III | 10-16 | 83 days | |
| Pedro Muncia | 19-428-CRB | Heroin, crack, meth | $20 | II | 8-14 | 126 days | Federal drug case, deport |
| Jose Ramos-Varela | 19-713-EMC | Meth | $20 | I | 10-16 | 57 days | |
| Anival Ramos-Velasquez | 19-503-EMC | Heroin, crack | $20 | I | 6-12 | 111 days | |
| Aaron Servellon | 19-689-RS | Crack, heroin, meth, fentanyl | $25 | I | 12-18 | 102 days | |
| Ristir Trejo | 19-535-RS | Fentanyl, crack, heroin | $20 | II | 21-27 | 140 days | |
| Luis Vargas-Valle | 19-386-RS | Crack | $21 | II | 8-14 | 6 months | 32 month illegal reentry sentence |
| Kelier Velasquez-Jossel | 19-483-EMC | Crack | $16 | I | 6-12 | 125 days | |
| Marco Velasquez-Trinidad | 19-456-WHO | Crack | $17 | I | 6-12 | 120 days | |
| Corey Wyatt | 19-396-RS | Alprazolam | $20 | VI | 6-12 | 99 days | Involuntary manslaughter, assault with deadly weapon |

## **CONCLUSION**

For the reasons above, Mr. Rosales-Avila asks this Court to sentence him to time served of approximately 193 days.


Dated:      April 22, 2020                    Respectfully submitted,

                                              STEVEN G. KALAR
                                              Federal Public Defender
                                              Northern District of California


                                                        /S
                                              HANNI M. FAKHOURY
                                              Assistant Federal Public Defender

DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE
*ROSALES-AVILA*, CR 19–00536 VC